Patrick J. Cerillo, Esq.
Patrick J. Cerillo, LLC
4 Walter Foran Blvd., Suite 402
Flemington, NJ 08822
T: (908) 284-0997
F: (908) 284-0915
pjcerillolaw@comcast.net
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MALIBU MEDIA, LLC,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>HOWARD LEE, TIMOTHY ARMSTRONG, WILLIAM SWARTZ, DIMPLE VENIGALLA, GREGORY TARRIS and JOHN DOES 25 and 28-62,<br><br>　　　　　　Defendants. | **JURY TRIAL DEMANDED**<br><br>Civil Action No. 3:12-cv-03900-AET-LHG<br><br>**AMENDED COMPLAINT** |

　　　　Plaintiff, Malibu Media, LLC. ("Plaintiff"), sues Howard Lee, Timothy Armstrong, William Swartz, Dimple Venigalla, Gregory Tarris, and John Does 25 and 28-62, and alleges:

### Parties

　　　　1.　　Plaintiff is a limited liability company organized and existing under the laws of the State of California and has its principal place of business located at 409 W. Olympic Boulevard, Suite 501, Los Angeles, CA 90015.

　　　　2.　　Defendant Howard Lee, formerly known as John Doe 3, is an individual who resides at 60 Spencer Lane, Watchung, NJ 07069.

1

3.  Defendant Timothy Armstrong, formerly known as John Doe 5, is an individual who resides at 291 E Virginia Ave, Manasquan, NJ 08736.

4.  Defendant William Swartz, formerly known as John Doe 9, is an individual who resides at 49 Cedar Terrace, Parlin, NJ 08859.

5.  Defendant Dimple Venigalla, formerly known as John Doe 24, is an individual who resides at 5 Iris Court, Edison, NJ 08820.

6.  Defendant Gregory Tarris, formerly known as John Doe 26, is an individual who resides at 103 Green Way, Allendale, NJ 07401.

7.  John Does 25 and 28-62 are known to Plaintiff only by an IP address.

8.  An IP address is a number that is assigned by an Internet Service Provider (an "ISP") to devices, such as computers, that are connected to the Internet.

9.  The ISP to which each Defendant subscribes can correlate the Defendant's IP address to the Defendant's true identity.

### Introduction

10.  This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the "Copyright Act").

11.  Each of the Defendants copied and distributed a website containing 16 federally registered copyrighted movies owned by Plaintiff. This is known as a "siterip."

12.  Through this suit, Plaintiff alleges each Defendant is liable for:

- Direct copyright infringement in violation of 17 U.S.C. §§ 106 and 501; and
- Contributory copyright infringement.

## Jurisdiction And Venue

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (patents, copyrights, trademarks and unfair competition).

14. As set forth on Exhibit A, each of the Defendants' acts of copyright infringement occurred using an Internet Protocol address ("IP address") traced to a physical address located within this District, and therefore this Court has personal jurisdiction over each Defendant because each Defendant committed the tortious conduct alleged in this Amended Complaint in the State of New Jersey, and (a) each Defendant resides in the State of New Jersey, and/or (b) each Defendant has engaged in continuous and systematic business activity, or has contracted anywhere to supply goods or services in the State of New Jersey.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because: (i) a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (ii) a Defendant resides (and therefore can be found) in this District and all of the Defendants reside in this State; additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases) because each Defendant or each Defendant's agent resides or may be found in this District.

## Joinder

16. Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was properly joined because, as set forth in more detail below, Plaintiff asserts that: (a) each of the Defendants is jointly and severally liable for the infringing activities of each of the other Defendants, and (b) the infringement complained of herein by each of the Defendants was part of the same series of transactions, involving the exact same piece of Plaintiff's copyrighted Work, and was

accomplished by the Defendants acting in concert with each other, and (c) there are common questions of law and fact; indeed, the claims against each of the Defendants are identical and each of the Defendants used the BitTorrent protocol to infringe Plaintiff's copyrighted Work.

## Factual Background

### I. *Plaintiff Owns the Copyrights to Motion Pictures*

17. An internet screen shot from www.copyright.gov of each of the 16 Registrations is attached as Composite Exhibit B.

18. Collectively, each of the 16 movies covered by the 16 Registrations are referred to as the "Works."

19. Each of the Works were on a website that was converted into are in a single torrent file, as evidenced by a single unique Cryptographic Hash Value (the "Unique Hash Number").

20. Each of the Defendants copied and distributed, through the BitTorrent protocol, the exact same torrent file, as evidenced by a single unique Cryptographic Hash Value, which contained Plaintiff's 16 registered works.

21. The date on which the United States Copyright Office Registered the works and the date IPP Limited recorded each Defendant's infringement is set forth on Exhibit C. Exhibit C demonstrates that each infringement occurred after the registration date.

### II. *Defendants Used BitTorrent To Infringe Plaintiff's Copyrights*

22. BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data; indeed, it has been estimated that users using the BitTorrent protocol on the internet account for over a quarter of all internet traffic. The creators and user's of BitTorrent developed their own lexicon for use

when talking about BitTorrent; a copy of the BitTorrent vocabulary list posted on www.Wikipedia.com is attached as Exhibit D.

23. The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

    A.    *Each Defendant Installed a BitTorrent Client onto his or her Computer*

24. Each Defendant installed a BitTorrent Client onto his or her computer.

25. A BitTorrent "Client" is a software program that implements the BitTorent protocol. There are numerous such software programs including μTorrent and Vuze, both of which can be directly downloaded from the internet. See www.utorrent.com and http://new.vuze-downloads.com/.

26. Once installed on a computer, the BitTorrent "Client" serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

    B.    *The Initial Seed, Torrent, Hash and Tracker*

27. A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using the Client he or she installed onto his or her computer.

28. The Client takes the target computer file, the "initial seed," here the subject website containing the copyrighted Works, and divides it into groups of bits known as "pieces."

29. The Client then gives each one of the computer file's pieces, in this case, pieces

5

of the copyrighted Works, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

30. When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

31. Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

32. The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

33. The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Works, on them and facilitates the exchange of data among the computers.

34. Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking).

C. *Torrent Sites*

35. "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol. There are numerous torrent websites, including www.TorrentZap.com, www.Btscene.com, www.ExtraTorrent.com, and www.piratebay.org.

36. Upon information and belief, each Defendant went to a torrent site to upload and

download Plaintiff's copyrighted Works.

### D. *Uploading and Downloading Works Through a BitTorrent Swarm*

37. Once the initial seeder has created a torrent and uploaded it onto a torrent site then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Works) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

38. The BitTorrent protocol causes the initial seed's computer to send different pieces of the computer file, here the copyrighted Works, to the peers seeking to download the computer file.

39. Once a peer receives a piece of the computer file, here a piece of the Copyrighted Works, it starts transmitting that piece to the other peers.

40. In this way, all of the peers and seeders are working together in what is called a "swarm."

41. Here, each Defendant peer member participated in the same swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

42. In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Works here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

43. Once a peer, here a Defendant, has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie.

E. *Plaintiff's Computer Investigators Identified Each of the Defendants' IP Addresses as Participants in a Swarm That Was Distributing Plaintiff's Copyrighted Works*

44. Plaintiff retained IPP, Limited ("IPP") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the internet to reproduce, distribute, display or perform Plaintiffs' copyrighted works.

45. IPP used forensic software named INTERNATIONAL IPTRACKER v1.2.1 and related technology enabling the scanning of peer-to-peer networks for the presence of infringing transactions.

46. IPP extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the file identified by the SHA-1 hash value of 121AC0B46088E7C235A23D4379BE65A1840E9B77 (the "Unique Hash Number").

47. The IP addresses, Unique Hash Number and hit dates contained on Exhibit A accurately reflect what is contained in the evidence logs, and show:

(A) Each Defendant had copied a piece of Plaintiff's copyrighted Works identified by the Unique Hash Number; and

(B) Therefore, each Defendant was part of the same series of transactions.

48. Through each of the transactions, each of the Defendant's computers used their identified IP addresses to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

49. IPP's agent analyzed each BitTorrent "piece" distributed by each IP address listed on Exhibit A and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Works.

50. IPP's agent viewed the Works side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

### Miscellaneous

51. All conditions precedent to bringing this action have occurred or been waived.

52. Plaintiff retained counsel to represent it in this matter and is obligated to pay said counsel a reasonable fee for its services.

### COUNT I
**Direct Infringement Against Howard Lee, Timothy Armstrong, William Swartz, Dimple Venigalla, Gregory Tarris and John Does 25 and 28-62**

53. The allegations contained in paragraphs 1-52 are hereby re-alleged as if fully set forth herein.

54. Plaintiff is the owner of the copyrights for the Works, each of which contains an original work of authorship.

55. By using the BitTorrent protocol and a BitTorrent Client and the processes described above, each Defendant copied the constituent elements of the Works that are original.

56. Plaintiff did not authorize, permit or consent to Defendants' copying of its Works.

57. As a result of the foregoing, each Defendant violated Plaintiff's exclusive right to:

(A) Reproduce the Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

(B) Redistribute copies of the Works to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

(C) Perform the copyrighted Works, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Works' images in any sequence and/or by making the sounds accompanying the Works audible and transmitting said performance of the Works, by means of a device or process, to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definitions of "perform" and "publically" perform); and

(D) Display the copyrighted Works, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Works nonsequentially and transmitting said display of the Works by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publically" display).

58. Each of the Defendants' infringements was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

59. Plaintiff has suffered actual damages that were proximately caused by each of the Defendants including lost sales, price erosion and a diminution of the value of its copyrights.

WHEREFORE, Plaintiff respectfully requests that the Court:

(A) Permanently enjoin each Defendant and all other persons who are in active concert or participation with each Defendant from continuing to infringe Plaintiff's copyrighted Works;

(B) Order that each Defendant delete and permanently remove the torrent file relating to Plaintiff's copyrighted Works from each of the computers under each such Defendant's possession, custody or control;

(C) Order that each Defendant delete and permanently remove the copy of the Works each Defendant has on the computers under Defendant's possession, custody or control;

(D) Award Plaintiff the greater of: (i) statutory damages in the amount of $150,000

per Defendant, per registered Work infringed, pursuant to 17 U.S.C. § 504-(a) and (c), or (ii) Plaintiff's actual damages and any additional profits of the Defendant pursuant to 17 U.S.C. § 504-(a)-(b);

(E) Award Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F) Grant Plaintiff any other and further relief this Court deems just and proper.

## COUNT II
### Contributory Infringement Against Howard Lee, Timothy Armstrong, William Swartz, Dimple Venigalla, Gregory Tarris and John Does 25 and 28-62

60. The allegations contained in paragraphs 1-52 are hereby re-alleged as if fully set forth herein.

61. Plaintiff is the owner of the copyrights for the Works, each of which contains an original work of authorship.

62. By using the BitTorrent protocol and a BitTorrent Client and the processes described above, each Defendant copied the constituent elements of each of the Works that are original.

63. By participating in the BitTorrent swarm with the other Defendants, each Defendant induced, caused or materially contributed to the infringing conduct of each other Defendant.

64. Plaintiff did not authorize, permit or consent to Defendants' inducing, causing or materially contributing to the infringing conduct of each other Defendant.

65. Each Defendant knew or should have known that other BitTorrent users, here the other Defendants, would become members of a swarm with Defendant.

66. Each Defendant knew or should have known that other BitTorrent users in a

11

swarm with it, here the other Defendants, were directly infringing Plaintiff's copyrighted Works by copying constituent elements of the Works that are original.

67.   Indeed, each Defendant directly participated in and therefore materially contributed to each other Defendant's infringing activities.

68.   Each of the Defendants' contributory infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

69.   Plaintiff has suffered actual damages that were proximately caused by each of the Defendants including lost sales, price erosion, and a diminution of the value of its copyright.

WHEREFORE, Plaintiff respectfully requests that the Court:

(A)   Permanently enjoin each Defendant and all other persons who are in active concert or participation with each Defendant from continuing to infringe Plaintiff's copyrighted Works;

(B)   Order that each Defendant delete and permanently remove the torrent file relating to Plaintiff's copyrighted Works from each of the computers under each such Defendant's possession, custody or control;

(C)   Order that each Defendant delete and permanently remove the copy of the Works each Defendant has on the computers under Defendant's possession, custody or control;

(D)   Find that each Defendant is jointly and severally liable for the direct infringement of each other Defendant;

(E)   Award Plaintiff the greater of: (i) statutory damages in the amount of $150,000 per Defendant, per registered Work infringed, pursuant to 17 U.S.C. § 504-(a) and (c), or (ii) Plaintiff's actual damages and any additional profits of the Defendant pursuant to 17 U.S.C. § 504-(a)-(b);

(F) Award Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(G) Grant Plaintiff any other and further relief this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

November 5, 2012

By: /s/ *Patrick J. Cerillo*
Patrick J. Cerillo, Esq.
Patrick J. Cerillo, LLC
4 Walter Foran Blvd., Suite 402
Flemington, NJ 08822
T: (908) 284-0997
F: (908) 284-0915
pjcerillolaw@comcast.net
*Attorneys for Plaintiff*

13